540 So.2d 400 (1989)
Guy DOMING
v.
K-MART CORPORATION.
No. 87 CA 1674.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*401 Theodore A. Mars, Jr., New Orleans, for plaintiff, appellee.
Lawrence Centola, Jr., New Orleans, for defendant, appellant.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This is an action for damages arising out of a slip and fall accident.

FACTS
On September 14, 1985, plaintiff, Guy Doming, and his wife were shopping in a K-Mart Store in Mandeville. The Domings were in the automotive department when plaintiff left his wife's side and proceeded down an aisle to select a can of Armorall, an upholstery cleaner, for their 1979 Oldsmobile automobile. He selected a bottle of cleaner from the shelf and walked back to his wife, who was at the other end of the aisle. After discussing the purchase briefly, they decided to wait until the item went on sale. Plaintiff then proceeded back down the aisle where he slipped on a clear, liquid substance that had accumulated on the floor. As a result of this fall, plaintiff suffered personal injuries, including a herniated disc and nerve root compression at the L4-5 level.
Thereafter, plaintiff filed suit for damages against defendant, K-Mart Corporation. Defendant answered the allegations of plaintiff's petition and, alternatively, alleged comparative negligence and assumption of risk. After trial, the jury determined that the defendant was 60% at fault and that plaintiff was 40% at fault in causing the accident. The jury also awarded plaintiff $25,500.00 for pain and suffering and/or mental anguish, $25,500.00 for loss of future earning capacity, $5,555.00 for past lost wages, and $3,591.00 for medical expenses,[1] for a total award of $60,146.00. This award was reduced by the percentage of fault attributed to plaintiff's own negligence, reducing the total award to $36,336.00.
Thereafter, plaintiff filed a motion for additur, judgment notwithstanding the verdict, *402 and, alternatively, for a new trial.[2] The trial judge granted plaintiff's motion for judgment notwithstanding the verdict, reducing the percentage of fault attributed to plaintiff from 40% to 5% and thereby adjusting plaintiff's total award to $57,138.70.
From this adverse judgment, defendant appeals, contending that the trial court abused its discretion in substituting its finding of fact regarding the percentage of fault allocated to each party for the finding of fact made by the jury. Plaintiff answered the appeal, requesting an increase in the general damage award from $51,000.00 to $100,000.00 and a reduction of the portion of fault attributable to plaintiff from 5% to 0%.

JUDGMENT NOV
Defendant contends that the trial court abused its discretion in substituting its finding of fact that defendant was 95% at fault and plaintiff 5% at fault for the finding of fact made by the jury that defendant was 60% at fault and plaintiff was 40% at fault.
The trial court's decision to enter a judgment NOV requires us to review the evidence under a standard different from that usually applied in a civil appeal. A judgment NOV, authorized by LSA-C.C.P. art. 1811,[3] is a procedural device whereby the trial judge may correct a legally erroneous verdict. The judge is empowered, if the proper standard is met, to reapportion fault and amend the amount of damages assessed by the jury. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2nd Cir. 1987). See Price v. Louisiana Farm Bureau Mutual Insurance Company, 457 So.2d 722 (La.App. 2nd Cir.1984), writs denied, 462 So.2d 205, 206 (La.1985).
A judgment NOV should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270 (La.1986); Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985). If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted and the trial judge should render a judgment notwithstanding the jury's findings. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment NOV should be denied. Blum v. New Orleans Public Service Inc., 469 So.2d 1117 (La. App. 4th Cir.1985), writ denied, 472 So.2d 921 (La.1985). In applying this standard, the court does not weigh the evidence, pass on the credibility of witnesses, or substitute its factual judgment for the jury's. Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App.3rd Cir. 1983), writ denied, 437 So.2d 1149 (La. 1983). See Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979).
We must therefore review the facts to determine whether they are so insufficient *403 to support the jury's verdict that reasonable men could not have differed as to liability. See LSA-C.C.P. art. 1811, Comment. The party against whom a motion for judgment NOV is made must be given the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. Rougeau v. Commercial Union Insurance Company, supra. Then, we must examine the record to determine whether the trial court's conclusions on liability were manifestly erroneous. Robertson v. Penn, supra. Applying the law to the facts of the instant case, we find no error in the trial judge's entry of the judgment NOV in favor of plaintiffs.
A. Negligence of Defendant
The duty of a store owner to protect customers from foreign substances is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free from substances or objects that may cause customers to fall. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Saucier v. Winn-Dixie Louisiana, Incorporated, 499 So.2d 1033 (La.App. 3rd Cir. 1986); Arnold v. T.G. & Y. Stores Company, 466 So.2d 529 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985). The determination of whether a store's protective measures have been reasonable is largely dependent on the circumstances of each case, taking into consideration the type and volume of merchandise, the volume of business, and the floor space used for customer services. The degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other relevant considerations. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Saucier v. Winn-Dixie Louisiana, Incorporated, supra. The store owner is not the insurer of the safety of his customers and is not required to keep the entranceways, aisles, and passageways in perfect condition. Each case turns on whether reasonable effort has been made to secure the patron's safety under the circumstances. Ritchie v. S.S. Kresge Company, Inc., 505 So.2d 831 (La.App. 2nd Cir.1987), writ denied, 507 So.2d 227 (La.1987); Carollo v. Shoney's Big Boy Enterprises, Inc., 433 So.2d 803 (La.App. 5th Cir.1983), writ denied, 441 So.2d 213 (La.1983).
Once the plaintiff has established a prima facie case by proving that a foreign substance created a hazard on the floor, that plaintiff stepped in the foreign substance, and that it caused him to slip and suffer injury, an inference of negligence on behalf of the store owner arises. The burden of going forward shifts to the store owner who must present evidence to exculpate himself from the presumption that he was negligent. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Ritchie v. S.S. Kresge Company, Inc., supra; Core v. Winn-Dixie of Louisiana, Inc., 471 So.2d 240 (La. App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985); Van Lieu v. Winn-Dixie of Louisiana, Inc., 446 So.2d 1362 (La.App. 1st Cir.1984). The store operator must then show (1) the hazard was not caused by one of his employees and (2) he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Brown v. Winn-Dixie Louisiana, Inc., supra; Riley v. Winn-Dixie Louisiana, Inc., 489 So.2d 931 (La.App. 5th Cir.1986), writ denied, 494 So.2d 329 (La.1986).
In the instant case, it is undisputed that a clear, liquid substance accumulated on the floor in one of the aisles in the K-Mart store, that this foreign substance created a hazard, and that plaintiff stepped in this foreign substance, causing him to fall and to be injured. As such, defendant was required to exculpate itself from this inference of negligence.
The testimony at trial established that defendant's policy relative to maintenance was to thoroughly instruct every employee to always be on the lookout for foreign substances. Defendant employed clean-up procedures on an "as needed" basis. No evidence was presented as to any organized program of floor maintenance or that any one employee was specifically assigned to patrol and monitor floor conditions. A conclusion *404 should be drawn, stating that defendant's conduct was negligent; defendant has failed to exculpate itself from the inference of negligence.
B. Plaintiff's Comparative Negligence

The next inquiry is whether plaintiff was negligent in contributing to his own injuries and damages. In Brown v. Great Atlantic & Pacific Tea Co., Inc., 509 So.2d 557 (La.App. 3rd Cir.1987), the court clearly and succinctly set forth the law regarding the comparative negligence in a slip and fall case as follows:
LSA-C.C. art. 2323 provides that a plaintiff whose negligence contributes to his own injuries for which he seeks damages shall have his claim reduced in proportion to his degree of fault. In order for the jury to properly reduce plaintiff's award, plaintiff's own negligence must have contributed to her injuries. In the typical grocery store slip and fall case the plaintiff does not have a duty to maintain a constant watch of the floor on which he is walking, while the owners of the premises have a high duty of care in keeping the aisles of their establishment clean. The rationale is explained in Kavlich v. Kramer, 315 So.2d 282, 284 (La. 1975):
`Self-service grocery stores require customers to look for and to find the objects which they wish to purchase. These objects are placed upon shelves of various sizes and heights. Discernment of a particular object for purchase requires fairly strict surveillance of the shelving in order to discover the item desired. Numerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk. Guy v. Kroger Company, 204 So.2d 790 (La. App.2d Cir.1967); Dever v. George Theriot's, Inc., 159 So.2d 602 (La.App. 3rd Cir.1964).'
Under certain circumstances a grocery store patron could be negligent in contributing to her own accident and injuries; for instance, where the shopper actually sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger. See Lee v. K-Mart Corp., 483 So.2d 609 (La.App. 1st Cir.1985); writ den., 484 So.2d 661, (La.1986). Also, it is arguable that, under certain circumstances, a store patron could fail to see a hazard which she reasonably should have seen and that by her failure she negligently caused her own injuries. [509 So.2d at 560]
Without evidence indicating some fault on the part of the store patron in a slip and fall accident, the patron cannot be found responsible, in whole or in part, for his damages. Brown v. Great Atlantic & Pacific Tea Co., Inc., supra; Bonnette v. K-Mart, Inc., 502 So.2d 202 (La.App. 3rd Cir.1987).
At trial, plaintiff testified that he and his wife went to K-Mart on September 14, 1985, to look for Armorall. Plaintiff located the product, selected a can, and walked down the aisle to meet his wife, who was standing approximately seven feet away. The Domings discussed the price of the item and decided against the purchase. Plaintiff then proceeded to return the item to the shelf. On his way, plaintiff slipped in a puddle of clear, liquid substance on the floor. Plaintiff testified that he did not see the substance prior to slipping and falling. He testified, however, that the puddle was approximately a foot or more in diameter. Plaintiff further testified that he was not distracted, was not walking rapidly, and was not carrying any packages or objects to obstruct his vision or hinder his hand or foot movements.
Charles Lambert, a store patron who was in the aisle at the time of plaintiff's accident, testified that he did not observe any liquid substance on the floor until plaintiff pointed it out. Lambert testified that the substance was almost clear and not easily detectable. The store manager also testified as to the presence of the clear, liquid substance on the floor.
Based upon the facts, the jury determined that plaintiff was 40% at fault. In *405 granting plaintiff's motion for judgment NOV, the trial judge stated:
There is virtually no way that this Court can find based on the facts presented during the course of the jury trial that the plaintiff was comparatively negligent in this case. However, since he did pass the site at least one time, I will by way of Judgment NOV reduce the plaintiff's comparative from forty percent to five percent.
Because plaintiff had two opportunities to observe the spill, but failed to see it on either occasion, the trial judge was not manifestly erroneous in apportioning 5% of the fault to him. Nor was the trial judge manifestly erroneous in increasing defendant's proportion of negligence to 95% since the defendant bore the greater duty of care. The trial judge also correctly applied the judgment NOV standard. Apportioning 40% of the fault to plaintiff was clearly erroneous because the evidence, or lack thereof, pointed so strongly and overwhelmingly in favor of finding that plaintiff was not 40% at fault in causing the accident, that reasonable men could not arrive at a contrary verdict. See Robertson v. Penn, supra.

QUANTUM
Plaintiff answered the appeal, requesting an increase in the general damage award from $51,000.00 to $100,000.00. Plaintiff contends that the trial court award is inadequate. The trial judge herein did not disturb the amount of general damages awarded by the jury, although reallocation of the percentages of fault resulted in the plaintiff receiving an increase in the amount of general damages. On review, the quantum award will not be disturbed unless the jury abused its much discretion. Core v. Winn-Dixie of Louisiana, Inc., supra.
The evidence presented at trial indicates that plaintiff was 52 years old and in relatively good health at the time of the accident. Plaintiff had some minor back problems prior to the accident; however, these problems were aggravated by plaintiff's fall. Plaintiff has a seventh grade education and has worked for the same company for twenty-two years as a maintenance mechanic. Plaintiff has done heavy manual labor for his entire work life.
Immediately after the accident, plaintiff was sent to Redi-Med by defendant. X-rays were taken of his injury, and he was given a prescription for pain. A week or two later plaintiff visited Dr. Bert Bratton, his treating physician. For eleven weeks, plaintiff went to therapy two to three times per week. Plaintiff was in the hospital for a day and a half for a myelogram test. Plaintiff also testified that he has not yet had the surgery recommended by his physician because he is afraid.
During the eleven weeks of physical therapy, plaintiff was not able to work. Testimony indicated that plaintiff's lost wages during this time amounted to $5,500.00. Although plaintiff returned to work, he testified that he has continued to suffer back pain since the date of the accident and was able to work only because of the assistance his co-workers gave him. He further testified that he is unable to do things around the house, such as cutting the grass or tending his garden. Plaintiff testified that he is no longer able to hunt as hunting requires walking and stepping over things, which plaintiff can no longer do. Remaining stationary for a long period of time also causes plaintiff's back to ache. Plaintiff testified that his injuries have affected his relationship with his wife.
Dr. Bratton testified that plaintiff has a ruptured and herniated disc at the L4-5 level and that plaintiff suffers from nerve root compression in this same area. Dr. Bratton recommended that plaintiff work as long as he could, provided plaintiff can avoid heavy work. When questioned as to whether surgery would be an acceptable form of treatment for plaintiff, Dr. Bratton replied that as long as plaintiff was getting along without the surgery, he did not consider the risk of surgery worthwhile. Dr. Bratton explained that one of the biggest risks of back surgery is residual pain, which sometimes can be greater than pre-surgery pain. Other risks of surgery include infection of the spinal fluid or nerve *406 damage. The doctor further testified that in some cases where a disc is removed, which would be the recommended procedure for plaintiff herein, the back is actually made worse. Dr. Bratton acknowledged that it would be very difficult to assess a percentage of plaintiff's disability, as plaintiff's complaints are subjective, even though plaintiff's subjective complaints are substantiated by objective tests. However, if surgery is performed and the disc is removed, plaintiff will have about a 30% disability.
It is undisputed that plaintiff has suffered a severe injury as a result of this fall. However, in our careful review of the record, we are unable to say that the trial court abused its discretion. Although the award may be low, we cannot say that it falls below the lowest award which was reasonably within the discretion of the trier of fact. Therefore, plaintiff's general damage award of $51,000.00 is affirmed.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed to defendant.
AFFIRMED.
NOTES
[1] The judgment reflects that the award for medical expenses was $3,591.00; however, the special verdict completed by the jury reveals a $3,500.00 award for medical expenses. Defendant has not raised this discrepancy on appeal.
[2] Although the judgment on plaintiff's post trial motions is silent as to which of plaintiff's motions the trial judge granted, the oral reasons for judgment clearly reflect that the trial judge granted plaintiff's motion for judgment notwithstanding the verdict. See State, Department of Transportation & Development v. Sugarland Ventures, Inc., 476 So.2d 970 (La.App. 1st Cir. 1985), writ denied, 478 So.2d 909 (La.1985).
[3] LSA-C.C.P. art. 1811 provides, in pertinent part, as follows:

A. (1) Not later than seven days, exclusive of legal holidays, after the signing of the judgment, or if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
* * * * * *
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.