585 So.2d 583 (1991)
Mrs. Anna K. BOUDREAUX
v.
SCHWEGMANN GIANT SUPERMARKETS.
No. 90-CA-1708.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Rehearings Denied October 16, 1991.
*584 C. Ellis Henican, Jr., Thomas P. Henican, Henican, James & Cleveland, Metairie, for plaintiff/appellant.
Stephen M. Little, Blue, Williams & Buckley, Metairie, for defendant/appellant.
Before GARRISON, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Schwegmann Giant Supermarkets, Inc. (Schwegmann) appeals a trial court judgment notwithstanding the verdict (JNOV) in favor of plaintiff Anna K. Boudreaux. Ms. Boudreaux cross appeals on the issues of comparative negligence and damages.
*585 We reverse the JNOV on the issue of comparative negligence and reinstate the jury verdict holding the plaintiff 40 percent comparatively negligent. We affirm the granting of the JNOV increasing the general damage award from $50,000 to $75,000. Additionally, we amend the judgment to award the plaintiff $13,508.33 in special damages and remand the case for determination of future hospitalization expenses.
Facts and Procedural History:
On May 6, 1987, Ms. Boudreaux, who was 63 years of age, and her son were shopping in the Schwegmann store at 5300 Old Gentilly Road in New Orleans. Ms. Boudreaux pushed her cart to the end of aisle 3B, up against some boxes which were stacked there, then left it and walked back down the aisle to look for Kool-Aid. Her attention was drawn to Flavor-Aid, another flavored drink mix, on the top shelf. As the plaintiff reached up to the top shelf, she slipped and fell to the floor, fracturing her wrist. Ms. Boudreaux testified that after the fall she saw some pieces of glass and a clear, liquid substance on the floor.
Ms. Boudreaux filed suit for damages suffered as a result of the fall. Schwegmann answered, denying all claims and alleging comparative negligence and assumption of risk in the alternative. After trial, the jury returned a verdict finding Schwegmann 60 percent at fault in causing the accident and awarding Ms. Boudreaux $50,000 in damages, to be reduced by her 40 percent comparative negligence, for a total award of $30,000.
Following the jury verdict, Ms. Boudreaux filed a motion for additur, JNOV, and, alternatively, for a new trial. The trial judge granted plaintiff's motion for JNOV, reducing Ms. Boudreaux's fault from 40 percent to 25 percent and increasing her general damages from $50,000 to $75,000, making Ms. Boudreaux's total award $57,250.
Schwegmann appeals, contending that the trial court abused its discretion in granting the JNOV because it substituted its own findings for the jury findings regarding the percentage of fault allocated to each party and regarding the amount of damages. Boudreaux answered the appeal, requesting an increase in the general damage award from $57,250 to $150,000 and a reduction of the portion of fault attributed to her comparative negligence from 25 percent to 0. Plaintiff also challenges the constitutionality of La.R.S. 9:2800.6 (Act 714 of 1988) relative to the evidentiary requirements for merchants to exculpate themselves from liability.
Standards for JNOV:
A trial judge is empowered to reapportion fault and amend the amount of damages awarded by a jury by JNOV only if the strict standards for granting a JNOV have been met. Doming v. K-Mart Corp., 540 So.2d 400, 402 (La.App. 1st Cir.1989). Although La.C.C.P. art. 1811 establishes the procedure for filing a motion for JNOV, the standard for granting the motion has developed jurisprudentially. The Louisiana Supreme Court, in Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986) summarized the standard as follows:

Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), decided by an en banc court, set out the criteria to be followed on motions for directed verdict and motions for judgment notwithstanding the verdict in the federal courts. When "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ..." 411 F.2d at 374.
Id. at 273-74. (Other citations omitted.)
Additionally, "a trial court may not weigh the evidence, pass on credibility of witnesses or substitute its own judgment for that of the jury" when deciding a motion for JNOV. Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir. 1990). A JNOV is properly granted only *586 "when, without weighing the credibility of the evidence or the witnesses, there cannot be but one reasonable conclusion as to the correct and proper judgment." Alumbaugh v. Montgomery Ward & Co., Inc., 492 So.2d 545, 548 (La.App.3d Cir.1986). The fact that the trial judge concludes that the preponderance of the evidence favors the moving party is insufficient. Doming, 540 So.2d at 402. A JNOV is appropriate only when the jury verdict is "one which reasonable men could not have rendered." Adams v. Security Insurance Co., 543 So.2d 480, 486 (La.1989). "Where there is such evidence upon which reasonable men might render a verdict in favor of the non-moving party, or where there is conflicting evidence, a judgment notwithstanding the verdict should not be awarded. Alumbaugh, 492 So.2d at 548.
Thus, a trial judge is not at liberty to reform a jury verdict under all circumstances. When the record contains competing competent evidence which forms a basis for a rational decision by the jury, the trial judge may not substitute its findings of fact for those of the jury through the JNOV procedure. A trial judge's application of the JNOV doctrine is limited by the jurisprudence to those cases where the jury's verdict is absolutely unsupported by any competent evidence.
In reviewing a trial court decision granting a JNOV, an appellate court must consider the facts in the light most favorable to the party opposing the motionin this case, the defendantand must then determine whether the trial court's conclusions were manifestly erroneous under the standard set forth above.
Comparative Negligence:
In granting the JNOV on the comparative negligence issue, the trial judge in the instant case stated as follows:
An analysis of the jury's conclusion that the plaintiff was 40% at fault can only be based upon the testimony of the plaintiff that she went past the spot where the spilled substance was located, turned back the other way and then slipped in the substance. The purpose of a self-service grocery is to entice patrons to keep their eyes on the shelves, not the floor; the plaintiff in this case cannot be more than 25% at fault. See, e.g., Doming v. K-Mart Corp., 540 So.2d 400; Batiste v. Joyce's Supermarket, 488 So.2d 1318; Zeagler v. Dillard Dept. Stores, Inc., 521 So.2d 766. This is reinforced by the time between inspecions by the defendant's employees of the area where the injury occurred. The Court finds the plaintiff 25% at fault.
In Doming, 540 So.2d 400, the plaintiff walked to the end of the aisle and then proceeded back up the aisle where he slipped on a clear liquid substance. As in the instant case, the jury attributed 60 percent fault to the defendant and 40 percent fault to the plaintiff. The trial judge granted plaintiff's motion for JNOV, reducing plaintiff's fault from 40 percent to 5 percent. The stated reason for assessing any fault to plaintiff was that the plaintiff had two opportunities to observe the spill before he fell, but apparently failed to see it on either occasion. The First Circuit Court of Appeal affirmed the trial court's granting of the motion for JNOV, saying only that the judge was not manifestly erroneous in his decision.
Similarly, in Batiste v. Joyce's Supermarket, 488 So.2d 1318 (La.App.3d Cir. 1986), the trial court reversed a jury verdict attributing 50 percent negligence to a plaintiff who slipped and fell on the frozen foods aisle of the defendant's supermarket, apparently on eggs. The plaintiff's negligence in that case was reduced to 0 despite the fact the evidence showed that the plaintiff had taken several steps past the foreign substance and then went back prior to her slip and fall. The trial court's granting of the motion for JNOV was affirmed by the Third Circuit Court of Appeal, which noted that the record did not support a finding of "concurrent negligence" on the plaintiff's part because the plaintiff's behavior "comported with that of a typical browsing patron of a food store and was in no way unreasonable."
In Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App.2d Cir. *587 1988), the jury found the plaintiff, who had allegedly slipped on a small plastic clothing clip lying on a wood parquet floor, 50 percent at fault. The Court of Appeal affirmed the JNOV assessing all fault to defendant, saying: "Shoppers do not have a duty to meticulously and vigilantly watch over the floors of retail stores that display great volumes and varieties of merchandise to attract shoppers and promote sales." Id. at 770.
In the instant case, no witnesses to the plaintiff's accident testified at trial except Ms. Boudreaux herself, who testified as follows on cross examination:
Q You mentioned that you had left your basket somewhere before the accident happened, and I am wondering could you tell me where on the aisle did you leave your basket?
A At the end of this aisle to the back there were some boxes stacked up there and I pushed my basket up against those back boxes.
Q Do you know about in here somewhere (indicating)?
A Right, at the end of the aisle.
Q We will put a "B" here for your basket. Can you tell me, Ms. Bourdeaux [sic], did you walk all the way down the aisle and leave your basket and then walked back to where the Kool-Aid was?
A It was not that far because the aisles are not that long.
Q Pushing your basket, did you push your basket all the way down the aisle and then leave it and walk back?
A Well, it was not all the way down the aisle because, as I said, there were these boxes stacked up.
Q Well
A My basket was not very far.
Q When you came onto the aisle, you had a basket?
A Right.
Q You are pushing your basket down the aisle and then you leave your basket, and what I want to know is when you left your basket, did you walk back to where the accident happened?
A A few steps I had to walk back.
Q Then it would be fair to say that you had already walked past what was on the floor when you were pushing your basket?
A But I was in the middle of the aisle at the time.
Q Is it fair to say that you had already walked past where the accident happened, left your basket and then walked back to where the accident happened?
A Yes.
Q Okay. Now, when you walked back to where the accident happened, did you have anything in your hands?
A Nomy purse.
Q You were not carrying anything?
A I had a shoulder strap purse.
Q Did you look to see where you were walking? Did you look at the floor before the accident happened?
A When I got back to the Flavor-Aid when I noticed the Flavor-Aid on the shelfwhen I got back there I had to step over to the shelves. I did not look down. I was looking on the shelves.
Q But my question to you is when you left your basket and turned around to walk back, did you look at the floor in front of you, do you remember?
A I was probably looking at the shelves. I really can't say.
Q You would not have been walking like this (indicating) to look at the shelves?
A No, I was walking forward, but my head was turned toward the shelves.
Q I think you remember thatwhat did you tell us that you thought was on the bottom shelf where the accident happened?
A It looked like a lot of bottles of syrup.
Q Would they have been little bottles or big bottles?
A I would say maybe pint size bottles.
Q So, you did look down enough to notice what was on the the bottom shelf?
A Well, I mean, yes, I did notice that.
Q But you are telling the jury
*588 A It could have been after I fell that I noticed that too.
Trial transcript, Vol. III, pages 10-12.
The question before this court is whether, considering the above evidence in the light most favorable to the defendant, the trial court was manifestly erroneous in concluding that reasonable men could not have found that Ms. Boudreaux was 40 percent comparatively negligent in causing her own injuries. See Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir. 1990). Despite the trial court's reliance on the above cases to support his conclusion that the jury could not have found the plaintiff 40 percent negligent, our review of the record convinces us that he was manifestly erroneous in granting the JNOV on this issue.
It is well established that the duty of a customer in the display area of a retail store to maintain a lookout is diminished from that applied to "pedestrians" in other situations. Id. The reason for the diminished responsibility is the fact that the merchant intentionally seeks to distract the customer's attention to the shelves. Id. However, customers retain a duty to exercise reasonable care under the circumstances and are liable for injuries caused by hazards "observable with the exercise of reasonable care." Id.
After reviewing all the evidence, and especially plaintiff's testimony quoted above, we conclude that the record in the instant case contains sufficient evidence by which the jury could have reasonably concluded that the plaintiff failed to see what she should have seen. The plaintiff admitted that she walked past the spilled substance, then returned to the site of the slip and fall. Additionally, she stated that she was not carrying anything in her hands which might have blocked her view. A determination of whether a plaintiff was comparatively negligent is a question of fact for the jury. The trial judge's conclusion that a finding of only 25 percent comparative negligence is the one and only reasonable decision was clearly wrong.
For the above and foregoing reasons, the trial court judgment granting the plaintiff's motion for JNOV and reducing plaintiff's comparative negligence to 25 percent is reversed. The jury's finding that the plaintiff was 40 percent comparatively negligent in causing her own damages is reinstated.
Damages:
In granting the motion for JNOV on the issue of damages, the trial court found that "the total of $50,000 in damages found by the jury is woefully inadequate." As a result of this finding, the trial judge raised the damage award to $75,000.
Plaintiff's treating physician, Dr. Gregory Kinnett, testified at trial that the plaintiff suffered a "comminuted displaced distal radial" fracture as a result of her fall at Schwegmann. Although he originally attempted to set the fracture through use of a "closed reduction" to avoid opening the skin, surgery became necessary on May 7, 1987, the day after the accident, when the doctor determined that the fracture was not in an "appropriate" position. For that procedure, Ms. Boudreaux was placed under general anesthesia, with all the associated risks, and metal pins were placed through her skin and through the fragments of her wrist bones into the major bone in her forearm. After the surgery, she was placed in a cast and a compression hand rest. She wore the cast for more than a month, until June 8, 1987. During that entire time, she was required to keep her hand elevated above her heart.
When that cast was removed, the doctor discovered tenderness in the hand. The pins were removed and Ms. Boudreaux was placed in a short arm cast and sent to Hotel Dieu Hospital for occupational therapy. The second cast was removed on June 30, 1987, when the doctor found no tenderness or swelling. However, he testified that the x-rays showed a "significant loss of normal bone mineral around the joint where the fracture occurred."
On examination on August 25, 1987, some three months after the fall, the doctor discovered some limited motion and found that the healing bone was slightly greater in magnitude than expected. On *589 November 11, 1987, more than six months after the accident, the doctor discovered limited motion and numbness in the top of plaintiff's long finger. At that time, he recommended an electromyelogram to evaluate a possible nerve problem indicated by the numbness.
The studies revealed that the plaintiff suffered from medial nerve palsy, commonly known as carpel tunnel syndrome, for which she underwent a second surgical procedure, again requiring general anesthesia, on January 20, 1988. After the second surgery, Ms. Boudreaux's wrist was placed in a "large, bulky compression hand dressing," much like a "large boxing glove" with a plastic splint on the back of the wrist. She was unable to move her fingers, thumb, or wrist and once again her hand had to be elevated above her heart. On January 26, 1988, the bandage was removed and a splint was applied. Then, on February 2, 1988, she was placed in a short arm cast until February 29. When that cast was removed, Ms. Boudreaux was placed in a splint for three weeks.
Even after the surgery, Ms. Boudreaux continued to experience some tingling in her thumb and long finger, as well as some limited range of motion. By August of 1988, the limitation of motion had become significant. Dr. Kinnett assigned a 30 percent permanent partial impairment to plaintiff's left hand.
A year later, on August 21, 1989, more than two years and three months after plaintiff's fall, x-rays revealed that Ms. Boudreaux suffered from progressive post-traumatic degenerative arthritis of the wrist joint, which will require further treatment, including the probability that further surgical intervention will be necessary. At some point, Dr. Kinnett testified, Ms. Boudreaux will be faced with a choice between total wrist immobilization or "total wrist replacement." The plaintiff has indicated that she would choose the wrist replacement procedure, Dr. Kinnett indicated.
Based on the above testimony, we find that the trial court correctly concluded that the $50,000 awarded by the jury was "woefully inadequate" to compensate the plaintiff for her loss.
Additionally, the plaintiff contends that even the trial court judgment, which set the damage award at $75,000 was inadequate. The Louisiana Supreme Court established the standard for appellate review of the amount of a trial court damage award in Reck v. Stevens, 373 So.2d 498 (La.1979), which stated as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstance of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is [improper].
Id. at 501.
The jurisprudence prohibits an appellate court from disturbing a quantum determination unless the record reveals an abuse of discretion. Bitoun v. Landry, 302 So.2d 278, 279 (La.1974). "The pertinent question in determining whether an abuse of discretion has occurred is whether the award of the trial court can reasonably be supported by the evidence and justifiable inferences from that evidence." Baker v. City of New Orleans, 555 So.2d 659, 662 (La.App. 4th Cir.1989), citing Bitoun, 302 So.2d at 279.
The plaintiff in the instant case suffered a severe injury which left her with a 30 percent permanent partial disability to her left hand. She has already been forced to submit to two surgical procedures and anticipates additional surgery in the future. Nonetheless, we are unable to say that the $75,000 awarded by the trial judge was inadequate to compensate the plaintiff for her general damages or that the award cannot reasonably be supported by the evidence and inferences from the evidence.
However, we believe that Ms. Boudreaux is entitled to recover for the medical expenses proved at trial, in addition to the $75,000 general damage award given by the trial court. The trial judge in the instant case supplied the jury only with a general verdict form, without any reference *590 of special damages. The jurisprudence has established that courts of appeal have authority to award damages where the trial court erroneously fails to do so, provided the record contains sufficient proof of damages. Daugherty v. Casualty Reciprocal Exchange Ins. Co., 522 So.2d 1323, 1324 (La.App. 2d Cir.1988); Great American Surplus Lines Ins. Co. v. Bass, 486 So.2d 789, 793 (La.App. 1st Cir.), writ denied 489 So.2d 245 (La.1986).
Ms. Boudreaux presented evidence at trial which proved that she had paid $9,908.33 in past medical expenses and parking expenses related to the treatment of her injury. Additionally, Ms. Boudreaux attempted to solicit evidence concerning future medical costs from Dr. Kinnett. Dr. Kinnett was allowed to testify that his surgical fee for the anticipated future procedure would be approximately $3,600. However, Dr. Kinnett's testimony concerning the estimated hospitalization costs for a future procedure was disallowed on the basis of the defendant's objection that a surgeon is not an expert on hospitalization costs.
Expert testimony is admissible under the Louisiana Code of Evidence under the following circumstances:
Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Art. 703. Bases of opinion testimony by experts
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
In the instant case, Dr. Kinnett testified that he was familiar with the costs of hospitalization for a surgical procedure such as that which would be required by Ms. Boudreaux because he frequently performs such procedures and because he had recently reviewed the expenses incurred by another patient who had undergone such a procedure. We find that Dr. Kinnett was competent to testify to those costs by reason of experience, as required by La.C.E. art. 702, and that his proposed testimony would have been properly based on facts reviewed prior to the hearing, as allowed by La.C.E. art. 703. Therefore, the trial court improperly disallowed the testimony concerning future hospitalization expenses. See Landrum v. New Amsterdam Casualty Co., 149 So.2d 182 (La.App. 3d Cir.1963).
Unfortunately, the plaintiff failed to proffer Dr. Kinnett's testimony, and it is thus impossible for us to determine the cost of Ms. Boudreaux's future medical care. The case is therefore remanded for the sole purpose of determining the cost of the future hospitalization costs. The damage award is amended to award Ms. Boudreaux $13,508.33 for past medical care and future physician services, to be reduced by her 40 percent comparative negligence.
Because we have determined that the trial court decision holding Schwegmann 60 percent liable for Ms. Boudreaux's injuries is correct, we pretermit discussion of the constitutionality issue raised by the plaintiff.
Conclusion:
The trial court judgment granting the plaintiff's motion for JNOV and reducing the comparative negligence attributed to plaintiff from 40 percent to 25 percent is reversed and the jury verdict holding the plaintiff 40 percent comparatively negligent is reinstated. The judgment granting the JNOV and raising the general damage award from $50,000 to $75,000 is affirmed. Additionally, the judgment is amended to award the plaintiff special damages in the amount of $13,508.33. The case is remanded for determination of future hospitalization expenses. All costs of this appeal are assessed to the defendant.
*591 REVERSED IN PART; AFFIRMED IN PART; AMENDED IN PART; REMANDED IN PART.