1 iBARRY, Judge.
Ronnie and Gwendolyn Delome’s minor son, Taylor, allegedly received IV infiltration burns while hospitalized at Tulane Medical *141 Center. The Delomes individually and on behalf of Taylor, filed a complaint to initiate a Medical Review Panel against Tulane Educational Fund, d/b/a Tulane Medical Center, Hospital and Clinic (Tulane). The panel found that Tulane did not meet the appropriate standard for medical care. The Delomes then filed a petition for discovery in Civil District Court, #90-10340 “L,” which was transferred to division “F.” Later, they filed suit (# 92-17367) which was allotted to division “D,” then transferred to division “F.” The cases were consolidated.
The Delomes obtained a judgment approving a February 8, 1996 settlement with Tulane for $85,000.00 ($45,000.00 for Taylor and $40,000.00 for Ronnie and Gwendolyn De-lome) “plus additional consideration in excess of $15,000.00” for an equivalent payment of $100,000.00. Tulane admitted liability in the Receipt & Release with Indemnity and was released as to all claims including judicial | ¿interest. The Delomes dismissed Tulane and reserved their rights against the Louisiana Patients’ Compensation Fund (the Fund).
The case was heard by a jury on the issue of quantum. The jury awarded $80,000.00 for Taylor Delome’s pain and suffering, mental anguish, disfigurement, and disability; $10,000.00 for Taylor’s past and future medical expenses; and $10,000.00 for Ronnie and Gwendolyn’s loss of affection. The judgment noted the court’s approval of the Delome’s settlement with Tulane and declared that the Fund was entitled to a credit of $100,000.00 and “a credit on judicial interest on that sum for which Tulane was liable.” The judgment also stated that the Fund was entitled to a “credit of $100,000.00 and judicial interest on that sum.” The judgment was rendered for zero dollars.
The Delomes now argue:
1) the court erred by failing to award interest against the Louisiana Patients’ Compensation Fund;
2) the court erred by not allowing Dr. Henderson’s testimony as to hospital and other future medical costs; and
3) the jury award to Taylor was insufficient.
The Fund answered the appeal, claims the appeal is frivolous, and requests damages, costs, and attorney’s fees.

TESTIMONY

Gwendolyn Delome testified that Taylor was born on July 21,1989 at Woman’s Hospital in Baton Rouge. Due to problems, including an umbilical hernia, a limited sternum or chest bone, and a heart abnormality, the baby was transferred to Tulane Medical Center within hours. He underwent surgery to correct the hernia and received a heart catheter. After successful heart surgery on July 24, 1989, the doctor informed the De-lomes that Taylor suffered an IV burn Isduring surgery. The baby’s leg was blue and swollen from below the left knee to the ankle, similar to a bad bruise or sunburn. Taylor underwent debridement to remove the burned tissue. There was a hole in Taylor’s leg with no skin and the area was red and oozing fluid. After debridement the doctors recommended plastic surgery, but the Delomes decided against it. Taylor was hospitalized for six weeks and in Neonatal Intensive Care Unit for four and a half weeks. Mr. and Mrs. Delome took Taylor home and treated the wound with wet and dry procedures. Bandages had to be changed three or four times daily. Mrs. Delome gave Tylenol a half hour before she changed a bandage. She needed assistance because Taylor would cry and kick because of the pain.
Mrs. Delome stated that after Taylor was discharged from Tulane, they took him to another plastic surgeon to verify that surgery was necessary. They saw Dr. Gamer, but his office was too far away. She took Taylor to Dr. Teague, whom she did not like, and then went to Dr. Henderson. The De-lomes agreed to the future plastic surgery procedure that Dr. Henderson recommended. Mrs. Delome said that Taylor underwent two additional heart surgeries, one at Tulane and one at Children’s Hospital in Boston. She said Taylor could not crawl normally, he did not walk until he was 14 months old, and he favored his left leg for some time. At six years old (the time of trial), he could play without restriction.
*142 Ronnie Delome testified that Taylor’s leg and foot were swollen: and bluish like a bad sunburn. After debridement the nerves and tendons were visible and fluid was flowing and Taylor has a large scar.
|4Marie Cashio, Mrs. Delome’s aunt, and Melinda Johnson, Mrs. Delome’s friend, testified that Taylor’s bandages were changed three to four times a day and he screamed in pain.
Dr. Henderson, a board certified plastic surgeon and Taylor’s treating physician, testified that he first saw Taylor on March 21, 1990 and his last visit was four weeks before trial in 1996. He explained that intravenous fluid went into soft tissue and Taylor had lost a large amount of fat and skin which affected the inner part of the leg and ankle. The site was two by three and a half inches. The wound eventually healed but the fat and tissue were never replaced. Dr. Henderson, who conceded that his staff includes a paralegal, concluded that Taylor will have problems in the future. Taylor’s burn occurred in the subcutaneous tissue and destroyed blood vessels and the dermis and epidermis layers of the skin. The wet and dry procedure was very painful, but it was safer than utilizing repeated surgeries. The tissue in Taylor’s wound contracted in from the sides, but the skin was not replaced. Initially Taylor could not bend his ankle or toes, but regained full motion.
Dr. Henderson, who said that he had treated hundreds of patients with IV burns over a twenty, year period, testified that Taylor eventually will experience ulcers that will not heal and problems which may cause him to lose his foot unless he has cross leg flap surgery (though he conceded that he had never seen an ulcer on Taylor’s leg). Dr. Henderson opined that if Taylor lives a normal life span, he will need to have a cross leg flap (preferably between ages 9 and 15). That would require hospitalization for four weeks, scar tissue removal, and wound recreation. His legs would be pinned together (for weeks) with hardware and skin cut on the back of his healthy leg to provide tissue and blood vessels on the open | swound. Taylor will have to undergo physical therapy in order to walk afterward and will be discharged in about six months. Dr. Henderson’s fee for the procedure involving three separate surgeries is $10,700, follow-up exams will run $5,000, and a surgical assistant’s charge is $1,070. Dr. Henderson concluded that Taylor has 25% disability of his left leg. If he has the procedure Taylor will have 5% disability of the right donating leg.
On cross-examination defense counsel confronted Dr. Henderson with his March 21, 1990 report which stated that Taylor had a 25% permanent disability of the left leg which would reduce to 5%. Dr. Henderson explained that he had no photos at the time of the report and his conclusion was based on Mrs. Delome’s statement that the wound was the size of a half dollar. He conceded there was an alternative procedure, a microscopic free flap, which costs $100,000. He admitted that photographs taken during Taylor’s first visit when he was seven months old showed full wound closure. He conceded that in April, 1992 he recommended using skin ex-panders.
Dr. Ramsey, Taylor’s pediatrician, testified that Taylor had multiple problems at birth. He was born with no breast bone, one kidney, no spleen, an umbilical fistula, and heart problems. Dr. Ramsey saw Taylor on numerous occasions, but his notes showed no specific complaint about a burn on the left leg or problems crawling, walking, or development.
Defense expert plastic surgeon Dr. Teag-ue, who stated that his practice is mostly cosmetic surgery, testified that he saw Taylor on February 16,1990 and found a 6 by 1/2 centimeter red scar across the left foot at the ankle. He did not recommend surgical intervention. He saw Taylor in February, 1994 and February, 1996. The child did not have tenderness in the leg and had full range of motion. |6Pr. Teague recommended not touching the scar unless Taylor had problems with it. If the scar deteriorates, the solution would be an incision of the scar and advancement and closure, a two-part surgery to remove the scar and stitch the skin together. His fee would be $2.400.00 for the procedure. Dr. Teague said that a cross leg flap or free flap, which costs about $8,000.00, is used when there is a large area and sides cannot *143 be brought together. The doctor found no leg disability.
It was stipulated that Dr. Garner, plastic surgeon, would have testified that he saw Taylor on October 9, 1989 and found a depressed wound, a soft tissue defect in the left leg in the early healing phase and normal foot movement. He recommended local wound care and observation.

INTEREST

The Delomes argue that interest on the $100,000 award against the Fund should have been awarded. They claim the settlement with Tulane did not release the Fund from legal interest and the suit pre-dates the provision involving a credit on legal interest in the Medical Malpractice Act.
The Delomes rely on La. R.S.40:1299.42 B(2) (effective October 1, 1990), which provides that a qualified provider “is not liable for an amount in excess of One Hundred Thousand Dollars plus interest thereon accruing after April 1,1991, for all malpractice claims....” The Delomes argue that their petition to convene a medical review panel was filed May 3, 1990, prior to the amendment’s effective date when the statute did not provide for interest.[1] They argue that the ^substantive statute cannot be applied retroactively; therefore, the Fund is not entitled to a credit for the interest on the $100,000 award.
La. R.S. 40:1299.42 D(5) provides (before and after the 1990 amendment to R.S. 40:1299.42(B)(2)) that the Fund receives a credit “in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2) (footnote omitted).” Prior to the 1990 amendment, La. R.S. 40:1299.42 B(2) did not mention interest. In Castillo v. Montelepre, Inc., 999 F.2d 931 (5th Cir.1993) the Fund argued that the trial court erred when it awarded interest on the entire $500,-000 general damage award. The federal Fifth Circuit considered possible interpretations of the two subsections referenced above. If R.S. 40:1299.42(D)(5)’s reference to the amount of malpractice insurance as provided in R.S. 40:1299.42(B)(2) is interpreted to mean that the Fund receives a credit in an amount equal to the $100,000 limit, the Fund would not receive a credit for any interest and is liable for interest on the full amount. If the reference in R.S. 40:1299.42(D)(5) to R.S. 40:1299.42(B)(2) means that the Fund receives a credit equal to not only the $100,000 limit but also interest accruing after April 1, 1991, the federal Fifth Circuit declared that no interest accrued because the settlement was prior to April 1,1990. Therefore, the Fund would be liable for interest on the health care provider’s $200,000 settlement. The federal Fifth Circuit concluded under either interpretation an award of interest on the entire $500,000 was correct, but the court did not decide the interpretation question. The court discounted the Fund’s argument that it was released as to interest when the doctors were released from liability for interest (after settlement for $200,000). The Fifth Circuit stated that plaintiffs had independent claims for interest: one against the doctors on any amount of damages and a second one against the Fund on any |8award up to $500,000. Affirming the award of interest on the entire $500,000, the court held that plaintiffs’ right to interest under the amended version of La. R.S. 40:1299.42(B)(2) was unaffected by settlements with the health care providers. Id.
In Harden v. Southern Baptist Hospital, 94-2228, 94-2229 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, writ denied 95-2751 (La.1/26/96), 666 So.2d 676, this Court relied on Castillo. This Court considered plaintiff’s argument that he was entitled to legal interest from the Fund on the entire award, including on $100,000 deposited into the registry of the court by the hospital. At issue was whether the principle that the deposit of funds in court stops the running of interest prevails over La. R.S. 40:1299.47 which provides that interest accrues from the date the complaint is filed with the Fund’s Oversight Board. The timing of the petition and settlement or the applicability of the 1990 amendment to R.S. 40:1299.42(B)(2) were not men *144 tioned. With little discussion this Court “agree[d] with the reasoning applied” in Castillo, 999 F.2d at 931, and amended the judgment to award interest against the Fund on the entire amount of the award to run from the date the complaint was filed with the Oversight Board.
In Seagers v. Pallet, 95-924 (La.App. 5 Cir. 5/15/96), 680 So.2d 46, writ denied 96-2730 (La.1/6/97), 685 So.2d 117, the issue was whether the doctor, who paid $100,000 to plaintiffs, owed interest. The Fifth Circuit declared that the 1990 amendment to La. R.S. 40:1299.42(B)(2), which added as a credit “interest thereon accruing after April 1, 1990,” was not a substantive change. According to Pallet the amendment clarified the pre-existing law and made express the health care provider’s obligation to pay judicial interest on his portion of the judgment.' Id. The Fifth Circuit affirmed a judgment which found the doctor liable for | interest beginning April 1,1991 on $100,000, an application of the amended statute, not the pre-1990 language. Id.
This case does not involve an amount deposited in the court’s registry. The question is whether the Fund is liable for interest on the $100,000 amount. We agree with Castillo that plaintiffs’ settlement with Tulane did not release the Fund as to interest. Because the Fund is entitled to a credit for interest after April 1, 1991, Tulane would have been liable for interest after that date. Pursuant to La. C.C.P. art.1921 a trial court shall award interest “as prayed for or as provided by law”; La. R.S. 40:1299.47 M provides that interest shall accrue from the date of the filing of .the complaint with the Fund’s Oversight Board. We hold that the Fund is liable for interest on $100,000 accruing from the date that the Delomes filed a complaint with the Board until April 1, 1991. The judgment against the Fund is amended to award interest on $100,000.00 from the date that the complaint was filed with the Fund’s Oversight Board until April 1, 1991.

DISALLOWED TESTIMONY AS TO HOSPITAL EXPENSES

The Delomes contend the trial court prevented the jury from hearing testimony by Dr. Henderson, Taylor’s treating physician, as to hospital and other costs for future surgery. Dr. Henderson testified at length about a full thickness skin graft or leg cross flap procedure that Taylor would eventually need if he lived to normal expectancy. He stated that Taylor would be hospitalized four weeks, have his legs pinned together, and undergo physical therapy. Dr. Henderson said his charge for the three surgeries would be $10,700.00 and an assistant’s fee would be 10% of his fee or $1,070.00.
When Dr. Henderson was asked whether he was familiar with hospital charges and related costs, defense counsel objected that his testimony would be | iphearsay. Plaintiffs’ counsel continued his questioning. Defense counsel requested a conference which was off the record. Questioning continued and Dr. Henderson stated that the cost of his followup exams would be $5,000.00 and physical therapy, costs would be incurred. Dr. Henderson’s testimony as to actual costs was proffered.
The admissibility of expert testimony is covered by La. C.E. art. 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as ah expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Generally, a trial court has great discretion when deciding whether an expert has the competence, background, and experience to qualify as an expert witness. The court has wide latitude on whether a question or subject is within the expertise of an expert. Mitchell v. Popiwchak, 95-1423 (La.App. 4 Cir. 6/26/96), 677 So.2d 1050; Cross v. Cutter Biological, A Division of Miles, Inc., 94-1477 (La.App. 4 Cir. 5/29/96), 676 So.2d 131, writ denied 96-2220 (La.1/10/97), 685 So.2d 142.
The Delomes’ reliance upon Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583 (La.App. 4th Cir.1991), writs denied 590 So.2d 593 and 595 (La.1992), is misplaced. This Court found that the trial court erred by disallowing the testimony of a doctor as to costs of hospitalization for a *145 surgical procedure. The doctor there was competent to testify to the costs because he frequently performed the surgical procedure and had recently reviewed expenses incurred by another patient who had undergone the same procedure. In this case Dr. Henderson did not testify that he performed leg cross flaps frequently or recently; he said that in the past twenty years he had performed hundreds of them. He did not state that | uhe had reviewed documentation or records as to specific charges for such in-patient surgery at a hospital or for physical therapy. Dr. Henderson founded and was on the board of the Surgery Center, which was a one day out-patient facility, and he was familiar with those costs. He said that the Surgery Center researched general hospital prices to stay competitive. We conclude the trial court did not abuse its wide discretion by disallowing testimony as to the ranges of costs for the hospital stay, for physical therapy and for prescriptions and other items.
Regardless, the plaintiffs were not harmed by that ruling. The jury obviously discounted Dr. Henderson’s testimony that Taylor, who had full use of his leg and foot, should be hospitalized for a month, undergo three surgical procedures, and have physical therapy (in order to continue to have a disability in the future). Dr. Henderson testified that his fee and the surgical assistant’s charge would total $16,1070.00, well in excess of the jury’s award for past and future medical expenses. The jury clearly did not intend to award costs for that surgical procedure.

INADEQUATE AWARD

The Delomes argue that awards of $80,-000.00 for general damages and $10,000 for special damages were very low.[2] They argue that Taylor suffered when the bandage was changed several times a day and it took eight or nine months for a scar to form. The Delomes contend that Taylor will have to undergo Dr. Henderson’s comprehensive skin grafting operation in the future; he will be immobilized for weeks in a metal harness with pins through his legs and will suffer great pain during months of physical therapy-
haA reviewing court should not disturb a damage award absent a clear abuse of discretion by the trier of fact. Reichert v. State, Department of Transportation and Development, 96-1419, 96-1460 (La.5/20/97), 694 So.2d 193; Reck v. Stevens, 373 So.2d 498 (La.1979). A reviewing court should not modify an award unless it is below or above that which a reasonable trier of fact could assess for the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Here the jury heard Dr. Henderson’s detailed testimony relating to the leg cross flap procedure (the lengthy hospitalization, the therapy, and the recovery process), but did not include an amount to cover such surgery in the future expenses. Taylor had full use of his leg and foot. Dr. Henderson noted ulcerations, but admitted that he had never seen an ulcer on Taylor’s leg. Dr. Henderson stated that the surgery was necessary or eventually Taylor would develop problems. The procedure was drastic and no other doctor recommended it.
Taylor suffered an TV burn at Tulane after life-saving heart surgery soon after his birth. He underwent debridement. Taylor was hospitalized for 6 weeks; over four weeks he was in NICU due to unrelated problems. Taylor was born with a number of abnormalities. His parents used a wet and dry procedure which took off the skin and allowed new skin to grow. The bandage was changed three or four times a day and Taylor suffered excruciating pain. The jury heard conflicting testimony as to when the scar formed and the bandage procedure was no longer necessary. Mr. Delome said the scar formed after eight or nine months. Dr. Teague stated that there was a scar in February, 1990, seven months after the |i<jnjury, and photos show that to be accurate. Dr. Henderson *146 noted that the burn site had healed when he saw Taylor on March 21, 1990, nine months after the burn, and photos so indicate. According to Dr. Ramsey’s records, on November 29,1989 there was a healing scar.
Taylor’s suffering lasted for months. The site healed and Taylor has no loss of function in the leg or foot, with full motion and had no continuing problem.
The trial court did not abuse its discretion.

ANSWER TO APPEAL

Tulane filed an answer to the appeal seeking damages, costs, and attorney’s fees, but the answer was untimely. Under La. C.C.P. art. 2133 to file an answer to an appeal the appellee has 15 days from the return day or the lodging of the record, whichever is later. The return day for this appeal was September 7, 1996; the record was lodged September 18, 1996. The Fund filed its answer on February 28, 1997 (14 days after the filing of the supplemental volume on February 14, 1997).
Damages for a frivolous appeal under La. C.C.P. art. 2164 are not awarded unless it is clear that the appeal was filed for delay or that appellant was not serious. Elloie v. Anthony, 95-0238 (La.App. 4 Cir. 8/23/95), 660 So.2d 897, unit denied 95-2239 (La.11/27/95), 663 So.2d 731.
The Fund would not be entitled to such an award if its answer to the appeal had been timely.
The judgment is amended to award interest on $100,000.00 accruing from the date the complaint was filed with the Fund’s Oversight Board until April 1,1991. As amended, the judgment is affirmed.

AFFIRMED AS AMENDED.

. The Delomes concede that the petition to institute a medical review, panel is not in the record. The petition to institute discovery was filed on May 25, 1990, and the petition notes a previously filed complaint.

. The Delomes argue that this Court should conduct an independent review because of the trial court’s decision not to admit Dr. Henderson’s testimony as to hospital and other charges. There is no basis to conduct a de novo review. Our review is under the abuse of discretion standard.