357 So.2d 1346 (1978)
Timmy HANZO
v.
TRAVELERS INSURANCE COMPANY.
No. 8910.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
Rehearing Denied May 10, 1978.
*1347 Pitard, Pitard & Porobil, Gregory M. Porobil, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendants-appellants, Travelers Ins. Co. and Pizza Inn.
Before REDMANN, LEMMON and GULOTTA, JJ.
GULOTTA, Judge.
Defendants, appealing from an adverse judgment in a slip-and-fall case, contend the trial judge erred in his liability determination where plaintiff's testimony was inconsistent and the evidence established that the floor had been swept immediately before the accident and was clean and dry prior to plaintiff's fall. Defendants further claim, in this appeal, that an award in excess *1348 of $5,000.00 for lost wages was speculative because plaintiff was unemployed at the time of the accident and employment was "slow" during the approximate 2½ months of his disability. We reverse and remand on the award for lost wages and affirm in all other respects.
At approximately 10:00 or 10:30 p. m. on October 6, 1976, plaintiff and a companion entered the Pizza Inn located in Kenner and went to the counter to place an order. When directed by an employee to place his order with a waitress from a table in the dining area, plaintiff turned around, slipped and fell on the red-brick tile floor. According to plaintiff, he slipped on a wet or damp floor and, after the fall, noticed his shirt, pants, hair and hands were wet. His testimony was corroborated by his companion who testified that the floor was damp and that plaintiff's pants and shirt were damp. Both indicated that upon entering the premises they had not noticed any water, foreign substances or materials on the floor, or any warning signs posted for dampness. Plaintiff sustained back injury resulting in an approximate 2½-month disability during which time he was receiving medical treatment and was unable to work.
Under these circumstances, when a plaintiff proves he slipped and fell in a store or business establishment, not due to his fault, on a foreign substance or on a wet, damp or slippery floor, the burden of proof shifts to the store owner to exculpate himself from negligence. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Calecas v. Great Atlantic and Pacific Tea Company, Inc., 330 So.2d 619 (La.App. 4th Cir. 1976).
In connection with defendants' burden, Darryl Lincoln, a Pizza Inn employee at the time of the accident, testified that the area where the fall occurred was mopped each night after the 12:00 midnight closing but that no "regular policy" for inspecting, cleaning or sweeping each hour at designated intervals was in effect. According to this witness, if something was known to have spilled on the floor, it was "mopped up". Lincoln further stated that he had swept the area where plaintiff fell approximately one hour before the accident. He did not, however, mop the floor at that time. According to Lincoln, the floor was dry at the place plaintiff fell.
Denny Alvarez, another employee of Pizza Inn, though not present at the store on the day of the accident, testified that no one had the assigned duty to police during business hours the area where plaintiff fell. Alvarez stated, however, that waitresses travel back and forth in this area in the course of serving patrons in the dining room and indicated that if the waitresses see something on the floor, they "call it to someone's attention". This witness testified that on occasions employees would forget to clean, after closing, the "foyer" area where plaintiff fell.
A third Pizza Inn employee corroborated Lincoln's testimony that the floor was not damp at the time of the accident. She added that after the incident she had inspected the area to see if there were any foreign substances on the floor but had found nothing. She saw only a skid mark about 4" long over the tile floor. This witness added that the floor had not been recently waxed. She also stated that a large private party had taken place in the restaurant from 6:30 to 9:30 p. m. on the evening of the incident, that approximately 40 or 45 minutes were required following it to clean the restaurant and that the area where plaintiff fell was clean and dry. This employee acknowledged that when carrying trays from the kitchen to the dining area, waitresses traversed the area where the accident occurred. The implication is that spills from the trays could have occurred in this area.
The court concluded in oral findings of fact that plaintiff had slipped on the "damp floor" and that the floor had not been "properly maintained". Though defendants point out certain inconsistencies[1] in plaintiff's *1349 testimony, we do not consider these inconsistencies to be significant. As pointed out by the trial judge, this matter involved a credibility determination. His factual findings are supported by the record. We cannot say, under these circumstances, the trial judge erred.
While a showing of systematic, periodic inspections is significant in exculpating an owner of a large self-service establishment from a finding of negligence, regular, time-spaced inspections are not as relevant to the owner's duty in a small establishment like the Pizza Inn. Understandably, in a small establishment, foreign objects, spills or dampness on the floor are more easily seen by employees than in a larger store. What is relevant to each case, however, is that a reasonable effort is made to insure the patron's safety from a slip-and-fall accident under the circumstances. Kavlich v. Kramer, supra; Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4th Cir. 1977), writ denied, 346 So.2d 209 (La.1977). From the testimony it is apparent that a risk of spillage resulted from the waitresses' traversal of the area and that defendant's procedure of maintaining the floor did not constitute the supervision necessary under the circumstances.
The trial court awarded plaintiff as loss of wages $7.02 per hour at 40 hours per week for the five month period of disability. Plaintiff, an oiler,[2] worked out of a local union at various job sites. When his work on a job was completed, he customarily signed in on the out-of-work list at the union hall and was assigned, according to seniority on the list, to work on jobs as they became available. It is undisputed that plaintiff's rate of pay was $7.02 per hour and that he was unable to work from October 6, 1976, the date of the accident, through February 24, 1977, as a result of the injuries caused by the fall. Plaintiff testified that at the time of the accident he had been working on a job, obtained through the union, for about two or three months. Although he testified that he had not been out of work for more than two weeks at a time during 1976, the business agent from his union stated that work for oilers had been "extremely slow" that year. Furthermore, the agent's records showed that work orders had been issued for plaintiff in 1975 for ten different companies, indicating a somewhat inconsistent earning pattern.
Admittedly, a plaintiff's own testimony as to his loss of earnings may constitute the necessary preponderance of evidence, without the use of documentary support such as income tax records, but under the circumstances of this case plaintiff's inconsistent pattern of earnings cannot support a conclusion that he would have earned his hourly rate 40 hours every week during the period of disability. However, the record does indicate a substantial loss of earnings during this period, and denial of the entire claim for this item of damages is not justified.
Under the circumstances, we find it necessary to set aside the award for loss of wages and to remand the case for 1) introduction of income tax returns and other documentary evidence of recent earnings and for 2) setting the amount of lost wages based on past earnings and the probability that plaintiff's earnings would have continued at that rate if he had not been injured.
Accordingly, that portion of the judgment awarding plaintiff the sum of $5,503.68 for lost income is reversed and set aside. The case is now remanded for the *1350 reassessment of the award for loss of wages. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
REDMANN, J., dissents.
REDMANN, Judge, dissenting.
Self-service grocery stores deliberately distract their patrons' attention from the floor to the shelves displaying their wares, and for that reason we do not hold the patrons contributorily negligent for failing to see something obvious on the floor. This accident did not occur in a self-service store but in the well-lit lobby of a waiter-service restaurant, from so much water that it left plaintiff "dripping", he testified. Accepting the trial judge's credence in plaintiff and his girlfriend (although it is much more human for them to color the facts in his self interest, than for fired or resigned ex-employees to color facts in which they have no interest[1]), plaintiff was contributorily negligent in not seeing the quantity of water he described, on the floor in his path, in a brightly-lit room, without any distracting displays from which he was to serve himself.
The judgment should be reversed.
NOTES
[1] The inconsistencies noted by defendants are plaintiff's testimony that his companion had consumed one bloody Mary before the incident in contrast to her statement that she had "two or three" vodka and orange juices; and plaintiff's statement that the lighting in the Pizza Inn was "bright as the courtroom" as opposed to his companion's testimony that the lighting was dim.

Defendants also point out plaintiff's testimony in deposition that the floor was wet over its entire surface contradicts his statement at trial that he was aware of wetness only in the area of his fall and further observe that plaintiff made no complaints of wetness to defendant's employees despite his testimony that he slipped on the damp floor.
[2] The job description for an oiler in the record is that he greased cranes and was required to climb and lift heavy objects.
[1] The ex-employees do not merely disagree with plaintiff on whether the floor was wet and on whether plaintiff was allowed to use the telephone. They tell of plaintiff's complaining of the "shitty floor" and of many times calling the 25-year-old assistant manager a "bitch". Plaintiff admitted threatening to have his "little nephew . . . beat the tar out of" a 17-year-old employee. The former assistant manager also quotes him as saying "I know a Judge, my mother knows a Judge and I could get you fired." That witness was fired by the restaurant, and it is especially difficult to suppose that she was slanting her testimony to favor the ex-employer who fired her. Perhaps the improbability of the ex-employees' lying should enter into a determination whether plaintiff proved his facts as more probable than not.