433 So.2d 803 (1983)
Michael Sylvester CAROLLO
v.
SHONEY'S BIG BOY ENTERPRISES, INC., and the United States Fire Insurance Company.
No. 82-CA-186.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
Rehearing Denied July 15, 1983.
*804 Michael F. Barry, New Orleans, for Michael Sylvester Carollo, plaintiff-appellant.
Owen A. Neff and Peter S. Title, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for Shoney's Big Boy Enterprises, Inc., and the U.S. Fire Ins. Co., defendants-appellees.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
BOUTALL, Judge.
This case arises from injuries in a slip and fall accident. From a judgment in favor of the defendants, the plaintiff has appealed.
The plaintiff, Michael S. Carollo, and his wife, Charmaine, had supper at a Shoney's Restaurant on August 8, 1978. As they were leaving the restaurant Mr. Carollo slipped on a piece of hamburger bun near the cash register and fell. He was treated for pain in the lower back and leg for a long period of time and eventually underwent surgery for removal of a herniated disc on September 30, 1981. Suit was filed against Shoney's Big Boy Enterprises, Inc. and its insurer, U.S. Fire Insurance Company, on July 30, 1979, alleging permanent disability and pain.
Trial was held before a jury on February 10 and 12, 1982. The jury found the restaurant was not negligent and the district judge signed a judgment dismissing the plaintiff's suit on April 23, 1982. This appeal followed.
The appellant complains that the jury verdict was contrary to the law and the evidence. The jury rendered its verdict by *805 replying "No" to the first question of the jury interrogatories as follows:
"1) Do you find that the defendant, Shoney's, Inc., or any of its employees were negligent in this matter?
__yes __no
"If your answer is `yes', go on to the next question.
"If your answer is `no' stop here, sign and date this form and return to the courtroom."
In accordance with the instructions, the jury answered no further questions. The issues before this court are whether the record sustains a finding of no negligence on the part of the defendant and whether it supports an inference by the jury that the accident was staged.
The law as to slip and fall accidents is summarized in Smith v. Winn Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980) at 901, as follows:
"The jurisprudence reflects the view that upon proof that a foreign substance was on the floor at the time the plaintiff entered the store; that the plaintiff stepped on this foreign substance; and that it caused her to slip, fall, and suffer injury, the burden shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent. The defendant, as store owner, can carry its burden by establishing that it was free from fault and that it exercised reasonable care in protecting its customers from foreign substances on the floor. Reasonable care is exercised when the store owner takes reasonable protective measures, including periodic inspections, in order to keep the floors and aisles free of substances or objects that may cause customers to fall. If the evidence presented is sufficient to establish that the store owner has carried its burden, then the presumption of negligence will be rebutted and the defendant will be exonerated from liability. Kavlich v. Kramer, 315 So.2d 282, (La.1975); Gonzales v. Winn-Dixie Louisiana, 326 So.2d 486 (La.1976); Hanzo v. Travelers Ins. Co., 357 So.2d 1346 (4th Cir.1978); Hyman v. National Super Markets, Inc., 353 So.2d 397 (4th Cir.1977); Green v. Schwegmann Bros. Giant Supermarkets, Inc., 325 So.2d 621 (4th Cir.1976). One other rule which must be considered here is that the storeowner is not the insurer of the safety of its customers and further that it does not have to keep its entranceways, aisles and passageways in perfect condition. Lott v. Winn-Dixie of Louisiana, Inc., (4th Cir.1973); Rozelle v. Employer's Liability Assurance Corp., 260 So.2d 757 (2d Cir.1972)."
We note that smaller establishments like the convenience store in Kavlich v. Kramer, supra, and the small restaurant in Hanzo v. Travelers Ins. Co., supra, are not required to have regular, time-spaced inspections as are large supermarkets. Employees in smaller stores are in a position to see spills and foreign matter more easily than those in a larger store. As the court said in Hanzo v. Travelers, supra, at 1349:
"... What is relevant to each case ... is that a reasonable effort is made to insure the patron's safety under the circumstances...." (Citations omitted.)
In the case before us, the appellant's position is that Shoney's failed to exculpate itself from a presumption of negligence. Counsel for the defendant did not call any witnesses from Shoney's to establish cleaning procedures and explained that he was unable to locate personnel employed in that restaurant at the time of the accident, owing to manager and employee turnover. Counsel relied instead on the testimony of the plaintiff's witness, Lenora Portera, a waitress who met the Carollos in the restaurant the night of the accident. She testified that all Shoney's employees were expected to pick up anything they saw on the floor. Mopping and sweeping the floors was a duty of the busboys. She saw no debris on the floor other than the bun and the general condition of the floor was clean. Durwood Thigpen, a defense witness, testified that the floor was "very clean." Mrs. Portera surmised that the bun had fallen from a busboy's cart.
*806 The trier of fact, here the jury, must evaluate the credibility of witnesses and make factual determinations. Where its finding is not manifestly erroneous, that is, clearly wrong, the appellate court may not disturb it even though its own evaluation may be equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Whether the defendant satisfactorily exculpated itself from a presumption of negligence is a close question. It is inferred that the jury found Shoney's was not negligent primarily because it did not believe the plaintiff or his witnesses.
The plaintiff's credibility was put at issue by several gaps and conflicts in his testimony. Mr. Carollo stated that he had earned at least $7,000 as a painting contractor in 1978 before the accident but could submit no records whatever of any previous earnings, not even the names or addresses of persons whose houses he had painted. He explained that he only gave oral estimates to customers and kept no records. Mrs. Carollo did not recall anything about her husband's income and testified that she could not remember whether or not he was working at the time of the accident.
Mr. Carollo was in a scuffle with two policemen on April 10, 1979, eight months after the fall. This he did not report to his treating physician or to any other physicians who examined him, and admitted it to his own attorney shortly before trial. The two police officers, dressed in plain clothes, testified. Under the trial judge's ruling, they were not identified as officers and the criminal aspects of the incident were not revealed to the jury. Both witnesses stated that Mr. Carollo struggled with one of the officers and fell with the officer hard against a wall. When asked about the incident, Carollo replied that he did not hurt his back then and went to the hospital for a bloody nose. Carollo gave conflicting testimony as to $400 in cash, which he had on his person during the scuffle. In a deposition taken January 26, 1982, he said that he met someone at the race track who gave him a bag of money for a poker game. At trial two weeks later, he denied that anyone had given him the money, stating that his father had lent him some of it and the rest he won at the track.
The extent of the plaintiff's injuries was also put at issue. On March 23, 1979, Dr. Stuart Phillips, the treating physician, found Mr. Carollo "much worse" than in previous visits and was "worried that he was going to get paralyzed if he could not get fixed." The two police witnesses testified that he ran on April 10. Further, the physicians who examined Carollo before his laminectomy found discrepancies in his performance of the physical tests, i.e. bending, raising legs, for which no physical or structural disease or injury could account. The inference raised is that the discrepancies were due to voluntary behavior of Mr. Carollo.
None of the witnesses called actually saw the fall. Both Mr. and Mrs. Carollo testified that two men who had joined them in the booth, Mrs. Carollo's uncle and a mutual friend, were walking with them when Mr. Carollo fell; the friend was paying the check. Carollo's failure to call these men as witnesses, either of whom might have seen the fall, raises the inference that their testimony would not have corroborated his story. Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3rd Cir.1976) cert. denied, 334 So.2d 217 (La. 1976); Bynum v. Bynum, 296 So.2d 382 (La.App.2d Cir.1974). Mr. Carollo gave no indication that they were unavailable but said that he and his wife had not "associated with" the men since the accident.
The testimony of Durwood Thigpen, a defendant's witness, probably raised in the minds of the jurors the possibility that the fall was intentional. Thigpen was waiting for someone to meet him at the restaurant and was seated diagonally across from the Carollos, facing the entrance. The Carollos attracted his attention by looking repeatedly toward the floor near the cash register, to such an extent that he moved over in his seat to see what they were looking at. He also saw Mr. and Mrs. Carollo leave the table separately and in turn join a man *807 sitting in a car in the parking lot, then return. The parking lot was visible to Thigpen from his position next to a window. The Carollos denied having looked back to the floor or leaving the restaurant and it was demonstrated that Thigpen could not have seen exactly where their eyes were directed. However, the jury may have been impressed by the very fact that Thigpen, an independent observer, considered the behavior remarkable enough to report it to the manager and voluntarily give him his name and address.
Although the defendant did not allege fraud or an intentional act of the plaintiff in any pleading, counsel for the plaintiff did not object to Thigpen's testimony. The pleadings were thus enlarged by the evidence. As stated in Durham v. Evans, 377 So.2d 423 (La.App.2d Cir.1979), at 427:
"The general rule established by our jurisprudence is that pleadings may be enlarged by evidence adduced without objection, when such evidence is not pertinent to any of the issues raised by the pleadings and hence would have been excluded if objected to timely. LSA-C.C.P. Art. 1154; Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973); Webster v. Rushing, 316 So.2d 111 (La.1975); Barksdale v. Southern Airways, Inc., 365 So.2d 493 (La.App. 1st Cir., 1978)."
As we do not find the verdict of the jury to be clearly wrong, there is no reason for the judgment to be disturbed. Accordingly, the judgment appealed from is affirmed.
AFFIRMED.