583 So.2d 1186 (1991)
Judith Gail STOCKWELL
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY.
No. 90 CA 0661.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Ronald L. Causey, Baton Rouge, for plaintiff-appellant.
Douglas K. Williams, Baton Rouge, for defendant-appellee.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Plaintiff, Judith Gail Stockwell, appeals the trial court judgment dismissing her claim for injuries sustained when she slipped and fell in the foyer of a grocery store owned by defendant, Great Atlantic and Pacific Tea Company (A & P).

FACTS
On October 18, 1985, at approximately 8:25 p.m., plaintiff and her eleven-year-old daughter entered the foyer of the A & P grocery store located on Florida Boulevard in Baton Rouge, Louisiana. It had been raining that evening and was still drizzling when plaintiff walked into the foyer, took several steps, and slipped and fell on water which had accumulated in the foyer.
The foyer where the plaintiff fell was glass enclosed, measuring approximately 19½ × 10 feet, with glass walls and doors on three sides, and a glass ceiling. Once *1187 inside the foyer, customers were required to make a 90-degree turn to the right before passing through another door into the main shopping area. Two cloth-covered rubber-backed mats measuring 3 × 6 feet were placed in the foyer, extending from the outside entrance door all the way into the shopping area. There was approximately six to eight inches of exposed tile between the mat and the foyer wall. The plaintiff fell when she stepped off of the mat onto the exposed tile.
The plaintiff testified that when she entered the store it was dark and misting rain. She met a man leaving the store, who she later discovered was the night manager, and plaintiff asked him if they were open. The man replied that they were open 24-hours, and he opened the door for plaintiff and her daughter. Plaintiff's daughter entered the foyer first, and the plaintiff followed. According to the plaintiff, she told the man that she did not think the store was open because it was so dark.
Thereafter, plaintiff took several steps and slipped in water and fell. The man she was talking to rushed to her aid and assisted her into the store to fill out an accident report. The plaintiff testified that she was no longer talking to the man when she fell, and that she was looking straight ahead. On cross examination, the plaintiff admitted that she earlier testified in her deposition that she was talking to the man when she fell. Upon similar questioning by the court the plaintiff stated: "I was talking to the gentleman outside the door and he opened the door for us and it was dark and I had made a comment on how dark the foyer was. Then after that I went into the foyer and I slipped. I had only taken maybe two or three steps at the most when I had fallen." The plaintiff further testified that there were no mats in the foyer when she fell. On cross examination, the plaintiff admitted signing her petition for damages which states that she stepped off a mat and slipped. The plaintiff stated that the foyer was very dimly lit with no light in the foyer itself.
Stephanie Stockwell, the plaintiff's daughter, also testified that the foyer was dimly lit, that there were no mats on the floor, and that she could see that the floor was muddy and wet. She further testified that she was walking in front of her mother and did not actually see her fall.
Julius Clinton Stockwell, the plaintiff's husband, entered the store shortly after plaintiff's fall. He stated the foyer was "mighty dark" and when questioned about the floor of the foyer he stated, "[W]ell it was muddy. I don't remember any mats, any floor mats on the floor myself."
Perry Anthony Gremillion, the assistant manager on duty the evening of October 18, 1985, testified by way of deposition. Mr. Gremillion was told by an employee that a woman had fallen in the foyer. He immediately proceeded to the foyer where he observed Judith Stockwell lying on a mat with her feet extending into the tiled area, where the floor had moisture on it. He also observed a skid mark on the tile floor where Mrs. Stockwell's foot had displaced the moisture. He indicated that the area where Mrs. Stockwell stepped off the mat was the extreme left of the entrance door and was well off the normal course a person would take to get from the outside entrance door to the inside door. Mr. Gremillion explained that the moisture on the floor was apparently from customers' tracking water in and from bringing grocery buggies in from the parking lot. The normal operating procedures for A & P were to retrieve shopping buggies once every hour. It generally took several trips to retrieve all the buggies. After each group of buggies was taken into the store, the inside of the store would be mopped; after all the buggies were retrieved, which took approximately 10-15 minutes, the foyer mats were removed, and the entire foyer was mopped.
After the accident, Mr. Gremillion prepared a standard form accident report. The report stated that Judith Stockwell "was walking into the foyer during a light drizzle while buggies were being taken back into the store. She stepped off the floor mat and onto the wet tile and fell on *1188 her left side and back." Mr. Gremillion did not indicate when the foyer was last mopped, nor could he recall at the time of his deposition when the foyer was last mopped. The report indicates only one witness, the plaintiff's daughter.
Mr. Gremillion stated that A & P trained its personnel in safety procedures which included periodic inspections of the floors. Mr. Gremillion stated that he instructed his employees to constantly be aware of floor conditions and to look out for hazards on the floor. On rainy days two 3 × 6-foot mats were placed in the entrance foyer, and a mop and bucket with a caution sign were kept inside the main shopping area. Mr. Gremillion stated that he remembered the mats and bucket being in place the night of Mrs. Stockwell's accident.
Without stating its reasons, the trial court dismissed plaintiff's claims for failing to sustain her burden of proof. Plaintiff appeals, alleging that the trial court erred in finding that she failed to carry her burden of proof.

LAW
For slip and fall cases tried after July 18, 1988,[1] the burden of proof is set forth in LSA-R.S. 9:2800.6 as follows:[2]
Liability of a merchant for injuries sustained by a person while on the premises of the merchant
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damages.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
The threshold question is whether plaintiff proved that the accident was caused by a hazardous condition. A hazardous condition is one which creates an unreasonable risk of harm to customers under the circumstances. Johnson v. Ins. Co. of North America, 360 So.2d 818 (La. 1978); Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3d Cir.1989). In the context of slip and fall cases, a hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition. Kinchen v. J.C. Penney Co., 426 So.2d 681 (La.App. 1st Cir.1982).
*1189 Once a hazardous condition is proved, the burden then shifts to the storeowner who must present evidence to exculpate himself from the presumption that he was negligent. Kavlich v. Kramer, 315 So.2d 282 (La.1975). The store operator must then show: (1) the hazard was not caused by one of his employees, and (2) he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984).
As set forth recently by this court in Doming v. K-Mart Corp., 540 So.2d 400, 403 (La.App. 1st Cir.1989):
The duty of a store owner to protect customers from foreign substances is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free from substances or objects that may cause customers to fall. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Saucier v. Winn-Dixie Louisiana, Incorporated, 499 So.2d 1033 (La.App. 3rd Cir.1986); Arnold v. T.G. & Y. Stores Company, 466 So.2d 529 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985). The determination of whether a store's protective measures have been reasonable is largely dependent on the circumstances of each case, taking into consideration the type and volume of merchandise, the volume of business, and the floor space used for customer services. The degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other relevant considerations. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Saucier v. Winn-Dixie Louisiana, Incorporated, supra. The store owner is not the insurer of the safety of his customers and is not required to keep the entranceways, aisles, and passageways in perfect condition. Each case turns on whether reasonable effort has been made to secure the patron's safety under the circumstances. Ritchie v. S.S. Kresge Company, Inc., 505 So.2d 831 (La.App. 2nd Cir. 1987), writ denied, 507 So.2d 227 (La. 1987); Carollo v. Shoney's Big Boy Enterprises, Inc., 433 So.2d 803 (La.App. 5th Cir.1983), writ denied, 441 So.2d 213 (La.1983).
In the instant case it is undisputed that the foyer floor was wet and that it caused the plaintiff to fall and sustain serious injury. These facts presented sufficient proof to establish a prima facie case and shift the burden of proof to the defendant to exculpate itself from liability.
A & P contends that the burden of proof should not shift in the instant case because the accident occurred outside of the shopping area. The defendant argues that the policy reason for the increased standard of care in slip and fall cases, namely customer distraction by merchandise,[3] is not present in this case, and consequently the burden should not shift to the defendant. This same argument was rejected by this court in Bolin v. National Tea Co., 359 So.2d 690 (La.App. 1st Cir.), writ denied, 362 So.2d 577 (La.1978), wherein the plaintiff fell in a store parking lot. We found that:
[A] storekeeper has the same duty to keep such areas [parking lot] in a reasonably safe condition, and he may not permit hazardous conditions of which he has actual or constructive notice, to exist. Miller v. Broadmoor Village, Inc., 321 So.2d 925 (La.App. 1st Cir.1975); Lecompte v. State, Dept. of Pub. Saf., 343 So.2d 449 (La.App. 3rd Cir.1977). On the other hand, the patron in such areas is charged with using reasonable care for his own safety, and must see and avoid obvious hazards. The patron in the display areas does not have this burden because his attention is attracted to the items displayed on the shelves of the store.
Id. at 691.
In similar cases other courts have held that the storeowner can rebut the presumption of negligence by showing evidence of *1190 adequate cleanup measures, or that the plaintiff was not using reasonable care to avoid an obvious hazard. Clesi v. Tenneco, Inc., 560 So.2d 992 (La.App. 4th Cir.1990); Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App. 3d Cir.), writ denied, 531 So.2d 269 (La.1988).
We conclude that although the location of the fall, away from the displayed merchandise, will not prevent the burden of proof from shifting to the storeowner, it is an important consideration in determining the overall reasonableness of the storeowner's conduct. See LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312 (La.App. 5th Cir.1990); McCargar v. Babin Motors, Inc., 499 So.2d 1081 (La.App. 3d Cir.1986).
The plaintiff asserts that A & P failed to exculpate itself from liability. Plaintiff contends that A & P failed to maintain a reasonable standard of care for its customers because the foyer floor was excessively wet, the lighting was insufficient, and there were no signs to warn customers.
The illustrated diagram below is a facsimile of drawings in the record and depicts the configuration of the A & P foyer and the placement of the mats.

The evidence shows that defendant placed two 3 × 6 foot overlapping mats in the foyer, which covered the floor from the entrance door of the foyer all the way into the main shopping area. A mop and bucket with a "Caution Wet Floor" sign were kept immediately inside the shopping area. The foyer floors were mopped approximately once every hour after the grocery buggies were retrieved from the parking lot. Although there was no designated person to mop the floor, it was standard operating procedure for the floor to be mopped by the person retrieving the buggies.
With regard to the lighting in the foyer, Mr. John Hewitt testified by way of deposition that it was directly lit by three 500-watt lamps placed above the glass ceiling. He also stated that the foyer was indirectly lit from the main area of the store by means of florescent lights which were mounted on the ceiling approximately one and one-half feet from the foyer's inside glass wall, and also by two 250-watt high intensity discharge lamps which were *1191 mounted a few feet further away. Both plaintiff's daughter and husband testified that they could see the muddy, wet floor.
The plaintiff fell when she, for unexplained reasons, stepped off a three-foot mat into the floor space between the mat and the foyer wall. The foyer was not crowded, and the mat was wide enough to provide safe passage through the foyer without having to step on the tiled portion of the floor. According to Mr. Gremillion the area where the plaintiff fell was to the extreme left of the entrance door and was well off the normal course a person would take. The location of the fall shows that the plaintiff was only inches away from colliding with the foyer wall if she had continued on her course of travel. On cross examination of the plaintiff, she admitted that she was engaged in conversation with a man while she was entering the foyer. There was no merchandise in the foyer to distract the customers' attention. It was a rainy night and the plaintiff admitted that she was aware of the possibility that water would be on the floor. These facts, together with the numerous inconsistencies in the plaintiff's testimony, leads this court to conclude that the trial court judgment is correct. Under the circumstances we find that defendant maintained the foyer in a reasonably safe condition.
Our decision is consistent with the jurisprudence holding that the duty of a storekeeper is to keep the floors and passageways in a reasonably safe condition. Kinchen, supra. To require a storekeeper to keep the floor of the entrance foyer completely dry during a time of rain would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Clearly this is not required. Hall v. Kroger, 499 So.2d 469 (La.App. 2d Cir.1986); Johnson v. Tayco Foods, 475 So.2d 65 (La.App. 2d Cir.), writ denied, 478 So.2d 149 (La.1985); Thomas v. Winn Dixie Louisiana, Inc., 407 So.2d 520 (La.App. 4th Cir.1981); Smith v. Winn Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980).
For the reasons set forth the judgment of the trial court is affirmed in all respects. All costs to be paid by appellant, Judith Stockwell.
AFFIRMED.
NOTES
[1] The trial of this matter was held on November 21, 1988. LSA-R.S. 9:2800.6 was also amended by Act 1990, No. 1025 § 1, which became effective on September 1, 1990.
[2] LSA-R.S. 9:2800 was a direct response to the Louisiana Supreme Court ruling in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987), where the court concluded that Wal-Mart did not meet its two-fold burden under Brown v. Winn-Dixie, because it failed to prove that none of its employees caused the spill which precipitated the injury. The court noted that many Wal-Mart employees who could have caused the spill did not testify and held that only proving adequate clean-up procedures was insufficient. LSA-R.S. 9:2800.6, as amended by Acts 1988, No. 714, § 1, was enacted to counteract McCardie and apparently parallels existing jurisprudence prior to McCardie. Estes v. Kroger Co., 556 So.2d 240, n. 1 (La.App. 2d Cir.), writ denied, 559 So.2d 1360 (La.1990).
[3] See Kavlich v. Kramer, 315 So.2d 282 (La. 1975).