|]KNOLL, Judge,
concurring in part and dissenting in part.
I agree with the majority’s determination that the jury was clearly erroneous in awarding special damages, without awarding damages for Olivier’s pain and suffering. I further agree with the majority determinations that Olivier proved that he suffered a herniated cervical disc, that the accident aggravated his pre-existing SED, and that he failed to prove that the accident caused disc problems in the low back area. However, I find that the majority unduly penalizes Olivier for failing to mitigate damages, a fact I do not find proven by Pearson, and awards only $80,000 for pain and suffering.
Pearson argued in brief that Olivier refused cortisone injections and declined to undergo a myelogram.[1]
Louisiana jurisprudence has recognized that an injured plaintiff has a duty to |2take reasonable steps to mitigate damages. Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La.1979). In Aisole v. Dean, 574 So.2d 1248 (La.1991), the Louisiana Supreme Court examined this duty to mitigate in a setting that involved an aggravation of a pre-existing condition. It stated:
[W]e conclude that although a tortfeasor takes his victim as he finds him at the time of the injury, after that time, the victim has an affirmative responsibility to make every reasonable effort to mitigate damages.
Louisiana law is clear that the burden is on the defendant to show to what extent damages should be mitigated and that the rule of mitigation of damages should be applied with extreme caution. Reeves v. Travelers Ins. Co., 329 So.2d 876 (La.App. 2 Cir.1976).
After carefully reviewing the record, I do not find that the two objections raised in brief rise to the level that would require us to penalize Olivier’s damage award for want of mitigation. Initially, I note that the myelo-gram, a diagnostic tool, would have simply provided another means to confirm that Olivier suffered disc herniations in the lower back; that diagnosis had already been made with the aid of an MRI. I further note that the cortisone injection that was offered to Olivier may have temporarily eased his pain in the low back, but would not have eliminated his problem. As shown by the record, Dr. Shepherd did not recommend surgery for Olivier’s lower back and instead advised Olivier that he would have to learn to live with the pain in his low back.
Considering the prognosis of Dr. Shepherd, the various testimonies of the lay witnesses that established the dramatic change in Olivier’s lifestyle, the cervical disc herniation established, and Olivier’s testimony of how his pre-existing medical condition in the *502 low back was aggravated by the accident, I find that Olivier proved general damages greater than $80,000. Accordingly, I respectfully suggest that thejjinajority’s $80,-000 award is abusively low for this injury.
I further find that the majority errs in failing to award Olivier an amount for his past loss of wages. It is the plaintiffs burden to prove past loss of earnings and the length of time missed from work due to the accident. ANMAC Foundation, Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951 (La.App. 3 Cir.1992). Past loss of earnings are susceptible of mathematical calculation from proof offered at trial.
Olivier testified that he was an uncertified court reporter, that he served as a deputy court reporter at the time of the accident, and that he relieved the official court reporters as the need arose. The record shows that during 1990, the year before the accident, Olivier’s stenographic notebooks showed that he worked for four different district court judges on 59 days; his notes showed that he only worked one day, May 1, in 1991 in this capacity. Based on the evidence that showed the days that Olivier worked during the year prior to the accident, approximately 25% of the year, I find that he has shown that he is entitled to receive $2,577.86 ($31,000 x 21.62 days [25% of 94, the number of work days between the date of the accident and September 1, 1991]) for past loss of wages.
I further respectfully disagree with the majority’s affirmation of the jury’s assessment of 30% fault to Olivier. I find that he was free from fault in causing the accident.
Under Louisiana’s comparative fault principles set forth in La.Civ.Code art. 2323, a plaintiffs recovery is reduced by the degree or percentage of fault attributed to him by the trier of fact. In apportioning fault, the trier of fact must consider both the nature of conduct of each party at fault and the extent of the causal connection between the conduct and damages. A party who relies upon contributory negligence as a defense bears the burden of proving by a preponderance of the evidence that such Unegligence was a cause-in-faet of the accident. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3 Cir.), writ denied, 565 So.2d 450 (La.1990).
I find no evidence of negligence on the part of Olivier that could have caused or contributed to the accident. It is undisputed that Pearson’s automobile protruded approximately three feet into the lane of oncoming traffic and that while he was preparing for his turn, he was talking on his ear phone. It is also not disputed that Pearson’s view of oncoming traffic was limited by the curve and the line of cars stopped ahead of him, waiting to turn left at Bendel Road. Dr. Olin K. Dart, Pearson’s accident reconstruction expert, stated that Pearson’s vision of oncoming traffic was limited from between 60 and 100 feet. Dr. Dart farther stated that a vehicle, such as Olivier’s, that was traveling at the 35 m.p.h. speed limit would traverse 77 feet in 1½ seconds and would require a minimum of 140 feet to come to a complete stop.
Olivier testified that he was between 100 and 120 feet from Pearson when he first saw the vehicle stopped partially in his lane of travel. There is no suggestion in the record that Olivier was traveling in excess of the posted speed limit or that he was distracted.
Pearson’s main argument is that Olivier had time to take evasive action by moving into the right lane of traffic in the southbound portion of Pinhook. He asserts that there was no traffic in the right lane that would have prevented such a maneuver. Olivier’s comments to the adjustor candidly admit that he thought there was a white van in the right lane, but that he honestly could not recall because he had to react so quickly to the presence of Pearson’s vehicle in his lane of travel. When I compare the short time that Olivier had to react to Pearson’s actions in partially entering the oncoming lane of travel, I find that the jury manifestly erred in concluding Olivier 15was 30% comparatively negligent. Accordingly, I respectfully disagree with the majority’s determination that the jury was not clearly wrong in assessing Olivier with 30% fault.

. At trial Pearson also argued that Olivier refused chymopapin injections, discontinued physical therapy, and chose not to follow the medical recommendations that he walk and lose weight. Pearson has not reurged these on appeal. Accordingly, I find that he has abandoned those issues.